## WILLIAM H. ADAMS *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk. March 26, 27, 1908. — September 4, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Negligence,* Employer's liability, Railroad.

At the trial of an action against a railroad company by an engine driver in its employ, to recover for personal injuries received by him because of the derailment of the engine which he was driving, alleged to be due to a defective condition of the engine, the following facts were testified to by the plaintiff: He not only was experienced as an engine driver, but also was experienced in and familiar with the mechanical construction of engines. Three to five days before the accident he reported to the defendant the defective condition of the engine, which was that the breast beam had sunk so low that the forward "truck frame was down on the boxes." He noticed then that the flanges of the front wheels had cut into the breast beam, and realized that the result of such a condition was that the front wheels were likely to become fixed and unable to turn in rounding a curve. The accident happened on a trip from Plymouth to Boston. He had examined the engine before starting from Plymouth and had observed that it had not been repaired. At the time of the derailment he was running at the rate of from forty-four to forty-eight miles an hour around a three degree curve. He also testified that he did not appreciate that there was any danger in running the engine in such a condition at such a rate around such a curve. *Held,* that the plaintiff's injuries were as much due to his own as to the defendant's negligence, and that as a matter of law the plaintiff, with his knowledge and experience, was not in the exercise of due care if he did not appreciate the danger of his running the engine under the circumstances as he did.

TORT by an engine driver of the defendant to recover for personal injuries alleged to have been received by him because

of the derailment of an engine which he was running, due to alleged negligence of the defendant. Writ in the Superior Court for the county of Suffolk dated July 14, 1905.

There were five counts in the declaration. The case was submitted to the jury on the second count only, which was a count at common law and alleged as negligence of the defendant failure to furnish for the plaintiff's use suitable machinery and appliances, and to keep them in proper repair.

There was a trial before *Harris*, J. Such of the evidence as is material for the decision of the case is stated in the opinion. At the close of the evidence, the defendant among other requests asked the presiding judge to direct a verdict for the defendant upon the grounds that the plaintiff was not in the exercise of due care, that he had assumed the risks incident to the running of the locomotive in the condition described by him, and that the defendant was not negligent. The request was refused. The jury found for the plaintiff, and the defendant excepted.

*J. L. Hall*, for the defendant.

*J. H. Vahey*, (*P. Mansfield* with him,) for the plaintiff.

LORING, J. The plaintiff in this case was the engine driver of a passenger train on the defendant's road, which left Plymouth for Boston at 11.56 A. M., on September 29, 1904. By his own story he left South Weymouth for South Braintree three minutes behind time, with a determination to get to South Braintree on time if possible. The distance was three and a half miles and the schedule time was six minutes. That is to say, on his own testimony he was trying to make three and a half miles in three minutes; but the jury were warranted in finding, on other testimony given by him, that when he went round the curve where the accident happened he was going forty-five to forty-eight miles an hour only. The engine left the rails at a three degree curve, and the plaintiff was badly injured.

The sole ground on which the plaintiff finally went to the jury was that the defendant was negligent in not making the necessary repairs on the engine when he (the plaintiff) " reported it " to Mr. Perkins, the general foreman of the engine house in question. " At that time the engine was running low forward on the truck frame, which means that the frame of the forward truck was down on the boxes of the engine — being down causes the

breast beam to run on the flanges of the forward truck wheel," to use the plaintiff's own words as to the condition of the engine when he "reported it." He testified and the jury were warranted in finding that he not only made this verbal report but that he entered a written report in the book kept by the defendant for that purpose. That book had been lost or mislaid. The plaintiff's testimony was : " I told him that engine 837 was running low forward, that the truck frame was down on the boxes, and it was on the book." " The flanges of the wheel had cut into the breast beam and I noticed that but didn't make a report of that — that the flanges had cut into the breast beam."

It appeared that the engine had gone into the repair shop for general repairs on July 20 of the same year, and had been there until August 27, four weeks and five days before the derailment in question.

The plaintiff's story was that three or five days before the accident and not before then, he noticed that the engine was low forward, was riding hard and stiff, and that the flanges had cut into the breast beam and the angle iron. He said that the flanges had cut into the breast beam from three quarters of an inch to an inch, and that when the engine was at rest the breast beam was from one quarter to three eighths of an inch above the flange of the wheel.

The plaintiff testified that he was fifty-five years of age and had been "running an engine for about twenty-nine years, running all kinds of passenger and freight engines all over the road. Most of the time I have been a passenger engineer; I have been in the various round houses where the engines were stored; I have worked in the round house at South Boston, work that was ordered for me to do in the way of making repairs on locomotives, and on all parts of the locomotives. Have applied for two patents on engines. If they had a surplus of engineers they would put me to work in the round house. I am practically familiar with all parts of an engine, know how they should be constructed and put together, the same as all engineers. I am not a master mechanic. The repairs that I made were the usual running repairs that are reported and need tending to ; that I could do myself by being requested."

The plaintiff on the stand explained at length the construc-

tion of an engine and the danger incident to running an engine where the breast beam was liable to fall down on to the flanges of the forward wheels. If that happened the forward truck is held straight ahead and cannot turn under the superstructure of the engine, as it must do to run around a curve. In such a case nothing is left for the engine but to ride the iron and go off the track.

He testified that he examined the engine each day; that each time he examined it he found that no repairs had been made, and that he took the engine out after discovering its condition, including the day of the accident. His exact words were: " I had seen it upon the third and second day before the accident and noticed that the buffer was against the flange and that the trucks had not been raised." He also examined the engine at Plymouth on the day of the accident, before leaving for Boston, as well as at Boston before leaving for Plymouth. He then " discovered that the pony trucks were still low and in the same condition in Plymouth and I made no report of that except as I have already said on the fifth day before the accident. I didn't run on the fourth day. By riding stiff and hard I mean that the engine was riding like a tip cart; she was hung up forward so she didn't get the elasticity of the springs to ride easy. She rode stiff and hard and had been riding stiff and hard from three to five days."

The plaintiff was a skilled man in engines and the running of them, and knew all that the defendant knew or was chargeable with knowing. He testified indeed that he did not have any knowledge or appreciation that there was any danger in running that engine in the condition it then was in and in the manner in which he was using it. As matter of law one who knew what the plaintiff knew of engines was not in the use of due care if he did not know and appreciate the danger in running the engine in the condition it then was in and in the manner in which he was then using it.

The plaintiff and the defendant stood on an equal footing so far as negligence is concerned. If it was negligence for the defendant not to raise the engine including the breast beam, it was negligent for the plaintiff to run the engine when it was not raised. The plaintiff has argued that the defendant was

negligent because from the fact that the breast beam had come down on the forward wheels it was liable to come down again, and that he was not negligent because while it was at rest there was a clearance of one quarter to three eighths of an inch. He contended that there was a clearance of an inch to an inch and three eighths; that in getting the clearance you must add the depth of the cut which had been made in the breast beam. But in this he was wrong. As soon as the flange enters the cut the superstructure is caught. The truth is that it was negligence on the part of both the plaintiff and the defendant to run the engine when it was known or ought to have been known that the breast beam was liable to come down on the flange. And of the two the plaintiff was the more negligent, (although that is of no consequence,) because, knowing this, he ran his engine around a curve at forty-five to sixty miles an hour.

For these reasons we are of opinion that the presiding judge should have directed the jury to find a verdict for the defendant.

*Exceptions sustained.*